# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| GERALD MARSHALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:19-CV-260 (MTT) |
| | ) |
| ROBINS FINANCIAL CREDIT UNION, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Defendant Robins Financial Credit Union has moved to dismiss Plaintiff Gerald Marshall's complaint. Doc. 14. The Court converted that motion to a motion for summary judgment. Doc. 26. For the following reasons, that motion (Doc. 14) is **GRANTED**.

## I. BACKGROUND[1]

Marshall, a consumer, alleges that Robins, a credit union, "is inaccurately reporting its tradeline ('Errant Tradeline') with an erroneous scheduled monthly payment amount of $524.00 on Plaintiff's Trans Union[2] credit disclosure," even though he "no longer has an obligation to make monthly payments to Robins," in violation of the Fair Credit Reporting Act. Doc. 1 ¶¶ 7, 8. Robins admits that it reported to Trans Union that Marshall's account with Robins was paid and closed and that his previously scheduled monthly payment was $524.00. Doc. 24 at 2−3.

On March 5, 2019, Marshall first noticed the alleged inaccuracy on his Trans

---

[1] The factual allegations in the complaint are accepted as true because they are undisputed and are viewed in the light most favorable to the non-moving party. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

[2] Trans Union, a credit reporting agency, was previously terminated as a party. Doc. 20.

Union credit disclosure. Docs. 1 ¶ 9; 25-1. On April 12, he wrote Trans Union disputing the tradeline, stating he was no longer required to make monthly payments because the account was paid and closed and requested that Trans Union revise the credit report to reflect a $0.00 monthly payment. Doc. 1 ¶¶ 10, 11. Trans Union then forwarded the dispute to Robins, and Robins failed or refused to report the scheduled monthly payment as $0.00. *Id.* ¶¶ 12, 13, 16; Doc. 24 at 2. Marshall saw the same inaccuracy again on his June 4 Trans Union credit disclosure. Docs. 1 ¶ 16; 25-2. In short, it appears Marshall contends Robins submitted inaccurate information, the tradeline, to Trans Union.

After Marshall responded to Robins's motion to dismiss, the parties provided additional information in response to a Court order. Docs. 21; 24; 25. The Court then converted the motion to a motion for summary judgment and afforded the parties additional time to submit supplemental authority and materials pertinent to the motion. Doc. 26. The parties provided no additional information.

## II. SUMMARY JUDGMENT STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437−38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249−50). Further, where a party fails to address another party's assertion of fact as required by Federal Rule of Civil Procedure 56(c), the Court may consider the fact undisputed for purposes of the motion. FED. R. CIV. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

Robins argues that it did not furnish an inaccurate tradeline because the monthly payment amount of $524.00 is an accurate "historical term" for an account that it

reported was paid and closed.  Doc. 14-2 at 2−3.  In support of its motion, Robins submitted Marshall's "credit report journal also known as 'Tradeline'" dated February 1, 2016 that it submitted to Trans Union.  *Id.* at 2, 7; Doc. 24 at 2−3.  Marshall alleges that although the account had a zero-dollar balance, his Trans Union credit disclosure reflects he has "an erroneous scheduled monthly payment amount of $524.00 . . . [even though the account] was paid and closed . . . and Robins FCU failed or refused to report the scheduled monthly payment as $0.00 on the Errant Tradeline."  Doc. 1 ¶¶ 7, 16.

The FCRA states that "a person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."  15 U.S.C. § 1681s-2(a)(1)(A).  After a consumer notifies a furnisher of an inaccuracy, the furnisher must conduct an investigation and notify consumer reporting agencies of any inaccuracies found.  15 U.S.C. § 1681s-2(b).  Marshall's claim that Robins failed to conduct a reasonable investigation or correct the inaccurate tradeline fails without evidence of an inaccuracy.  *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018) ("Regardless of the nature of the investigation a furnisher conducted, a plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or complete, triggering the furnisher's obligation to correct the information.").  The motion thus turns on whether Robins reported an inaccurate tradeline to Trans Union.  15 U.S.C. § 1681s-2(a)(B) (stating that a creditor "shall not furnish information relating to a consumer to any consumer reporting agency . . . that . . . is inaccurate").

Courts have adopted two approaches when evaluating an allegedly inaccurate credit report: (1) the "technically accurate" approach, which requires only that information furnished is "not false" and (2) the "maximum possible accuracy" approach, which requires information that is accurate, not misleading, and complete. *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1281 (11th Cir. 2017). The Eleventh Circuit has not clearly adopted either one. *Id.* (stating that although the FCRA requires information to be "both accurate and not misleading, we cannot say that reading the Act to require only technical accuracy was objectively unreasonable"). But regardless of the approach, Robins did not report inaccurate or misleading information. The parties agree that the report accurately states that the account has been paid in full and closed; Marshall does not dispute that the report accurately states the historical payment amount; and Marshall has provided no evidence showing that listing the historical monthly payment amount is in any way misleading or incomplete. Docs. 24 at 2−3; 25-1 at 15; 25-2 at 16.

Furnishing accurate historical information neither changes the accuracy of the report nor causes any confusion regarding Marshall's Robins account status. *See Cahlin*, 936 F.2d at 1158 (holding that a credit reporting agency has no duty to disclose "only that information which is favorable or beneficial to the consumer"); *see also Hunt v. JP Morgan Chase Bank, Nat'l Ass'n*, 2018 WL 1183357, at *4 (S.D. Fla. Feb. 26, 2018) (comparing agencies to furnishers when analyzing how to interpret accuracy for purposes of § 1681s-2(b)) (citing *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 37−38 (1st Cir. 2010) (determining that the FCRA's text and purpose favor applying the same standards in cases brought against credit reporting agencies and furnishers due to "parallel obligations" and "considerable overlap" of responsibilities)), *aff'd*, 770 Fed. App'x 452 (11th Cir. 2019). If tradelines "shaded every credit history . . . in the best possible light for the consumer," the purpose of credit reporting would be pointless. *See*

*Cahlin*, 936 F.2d at 1158. Furnishing the accurate historical terms of payment on Marshall's reported tradeline does nothing more than allow credit reporting agencies to better "inform future creditors of [his] ability and willingness to satisfy [his] account." *See Seay v. Trans Union, LLC*, 2019 WL 4773827, at *4 (M.D. Ga. Sept. 30, 2019).

## IV. CONCLUSION

For the foregoing reasons, Robins's motion to dismiss (Doc. 14), converted to a motion for summary judgment (Doc. 26), is **GRANTED**. Accordingly, Marshall's FCRA claims against Robins are **DISMISSED with prejudice**.

**SO ORDERED**, this 10th day of February, 2020.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT